## MONTGOMERY v. MONTGOMERY.

1. Inadequacy of price, as a general proposition, will not per se be a sufficient ground to set aside a contract in a court of equity; yet that circumstance, taken in connection with others of a suspicious nature, may afford such a presumption of fraud as will authorize the court to set it aside.
2. Under the facts of this case, the court was authorized to find that the contract of release pleaded by the defendant as satisfaction of all claims of the wife upon him was void.
3. The amounts allowed as alimony and attorney's fees were not excessive.

No. 3833. DECEMBER 12, 1923. REHEARING DENIED MARCH 1, 1924.

Temporary alimony, etc. Before Judge Bell. Fulton superior court. April 30, 1923.

Mrs. Hulda W. Montgomery filed suit on January 13, 1923, against her husband, C. L. Montgomery, praying that she be allowed permanent alimony, temporary alimony, and counsel fees. Her petition alleged that she and the defendant intermarried on July 1, 1922, and that they lived together as husband and wife until December 16, 1922; and that the defendant was earning the sum of $115 per month. The defendant filed a plea and answer, denying that the plaintiff was entitled to alimony and counsel fees; and praying that he be granted a total divorce from plaintiff upon the grounds of impotency and cruel treatment. In answer to the plaintiff's action for alimony and counsel fees, the defendant alleged that on the date of the separation the plaintiff entered into a valid and binding contract with the defendant, under the terms of which plaintiff settled her claims against the defendant for alimony and attorney's fees and released him from all obligation to pay her alimony and attorney's fees, and released him from all obligations whatever of every nature growing out of marital rela-

tions. The material parts of that contract are as follows: After reciting that the plaintiff and defendant had recently been married and for certain reasons had agreed to separate and live apart, the contract stipulates that "for and in consideration of the sum of $125 cash in hand paid, and other valuable considerations received, I [plaintiff] hereby agree to release Clinton L. Montgomery [defendant] from all future obligations that he might be due me because of our relation as man and wife, either financially or otherwise, releasing him from all legal obligations whatsoever, of every nature, that he might be due me as my husband." This was signed by the plaintiff.

Concerning the making of this contract the plaintiff testified as follows: "He [defendant] drove me away from him that day. We were boarding with his sister at the time, and he told me he would not live with me any longer, and I left and went home to my parents at Thomasville, Ga. I was very nervous and was crying almost all the morning. I am a frail woman, and my health is not good. I haven't a very good education. I have taken a business course and studied typewriting. This is all I know how to do. At present I am employed in the office of my attorney, Mr. Thomas E. Scott, and I earn $40 per month. This is not sufficient to pay my board and buy my clothes and pay all my other expenses. I need at least $30 per month in addition to this to defray my living expenses. My husband is an able-bodied man, and earns $115 per month. He works for the United States Government at the Terminal Station, handling mail. He has no property that I know of. My parents are poor and are not able to take care of me. They live at Thomasville, Georgia. I left them in January, and came back to Atlanta to get a position and go to work. I have tried to effect a reconciliation with my husband, but when I went to see him he slammed the door in my face and told me, 'You and I have finished. You can not come in.' The reason I left my husband was because he told me he would not live with me any longer. He said he was disappointed in me and did not love me, and would not live with me. On December 16, 1922, I signed a contract. The paper which you show me is the contract which I signed, and that is my signature. I read this paper before I signed it. I knew what was in it. My husband told me that if I signed this contract he would give me half of

what he had. When he first presented it to me, I refused to sign it. My husband told me it was immaterial to him whether I signed it or not; but that if I did not sign it, he would give me nothing except railroad fare home. He told me if I signed this, he would give me half of what he had, which was $125. I later took the $125 and signed the contract. I was nervous and crying when I signed it, and hardly knew what I was doing. My husband didn't try to force me to sign it, but he did tell me he wouldn't give me anything except railroad fare home if I refused to sign it. When I signed this contract, he paid me the money. Before we were married I told my husband that I suffered with rheumatism, but he said that made no difference to him and that he loved me and wanted to marry me anyway. My husband has not contributed anything to my support since December 16, 1922."

The defendant testified in regard to the same subject in part as follows: "I told her that if she would sign the contract which you have in your hand, I would give her half of the money which I had saved up. I had Mr. E. M. Hiscock, an attorney, prepare this contract for me. My wife told me that if she signed that contract, she couldn't make me support her in future. I told her that would be the effect of signing it, and she then refused to sign it. I told her it was immaterial to me whether she signed it or not; but that if she didn't sign it, I wouldn't give her anything except enough money to pay her expenses to her parents' home. She later decided to sign the contract and take the $125, which was half of what I had. She signed the contract, and I paid her the $125. . . . I did not try to force her to sign the contract, and told her that if she did not sign it, I would pay her expenses to go to her parents' home, but would not pay her anything else." Defendant further testified that he works for the Government at the Terminal Station, handling mail; that he has no property; that he suffers with rheumatism and is not able to work all the time; that he is paid at the rate of $115 per month, but is not paid for the time he is at home sick.

After hearing the evidence the court allowed the plaintiff the sum of $30 per month as temporary alimony and $20 as attorney's fees. The defendant excepted.

*Davis & Grant,* for plaintiff in error. *T. E. Scott,* contra.

BECK, P. J. (After stating the foregoing facts.) It is evident that the court, in allowing the amounts specified as alimony and attorney's fees, treated the contract between the husband and wife, · which is set forth in the statement of facts, as null and void; and the question is whether, under the evidence in the record, the court could properly decide that the contract was void.

We cannot say that the court erred in holding the contract void. Where husband and wife have separated and agreed to live apart, or where they have determined upon a separation, a contract making provision for the support of the wife in lieu of alimony and by the terms of which the husband is released from all obligations growing out of the marital relation will be upheld, and will not be set aside because the amount agreed upon for her support and maintenance is inadequate. In order to set aside such a contract it must be made to appear that the contract was procured by fraud, coercion or duress. Civil Code, §§ 4112, 4255, 4129. These sections relate to sales, and fraud in the contract of sale; but the principles are applicable to the contract which we have under consideration. In section 4129 it is declared that "Inadequacy of price is no ground for rescission of a contract of sale, unless it is so gross as combined with other circumstances to amount to a fraud." And in *Hoyle* v. *Southern Saw Works,* 105 *Ga.* 123 (31 S. E. 137), it was said: "As a general rule, inadequacy of price alone will not be sufficient to set aside a contract; yet that circumstance, taken in connection with others of a suspicious nature, may afford such a vehement presumption of fraud as would authorize the court to set it aside." It seems here that the sum allowed the wife in consideration of her release of the husband from all obligation is so totally inadequate that we ought to look to all the circumstances under which this contract was signed. That there is great inadequacy of consideration is apparent. The court could take the testimony of the wife as absolutely true; and if that be true, she was practically being driven from her husband's home. She was greatly excited and agitated and in tears. The husband told her that she could take the small sum offered in full settlement of all claims she had upon him, or she could take nothing other than the price of a ticket home. She says he told her that the sum offered was half of what he had. He said in his testimony that it was half of the money that he had. But if he had only

$250 in money, half of that amount was not necessarily half of all that he had; for he had his ability to labor and earn; and if he had not a cent in cash and the wife was entitled to alimony, she had a claim upon his ability to labor and acquire property. If in cases of sales, where the parties are dealing at arms' length, inadequacy of price, coupled with other circumstances, may amount to fraud, as held in the case last above cited, surely in a case like this, where a husband tells the wife from whom he is about to separate that she can take what is offered or take nothing, and makes that statement to her while she is hardly in condition to appreciate her surroundings and the bearing of what is said upon the transaction into which she is entering, these circumstances may be taken into consideration in connection with the inadequacy of the sum offered, in determining whether or not the contract was a fair contract and whether or not it was tainted with fraud and even duress. In the case of *Wormack* v. *Rogers*, 9 *Ga.* 60, it was held that "Inadequacy of price, as a general proposition, will not, per se, be a sufficient ground to set aside a conveyance in a court of equity; yet that circumstance, taken in connection with others of a suspicious nature, may afford such a vehement presumption of fraud, as will authorize the court to set it aside."

All the facts and circumstances considered, we conclude that the judge had before him sufficient evidence to authorize the judgment rendered; and it is therefore affirmed.

*Judgment affirmed. All the Justices concur, except Gilbert, J., disqualified.*